**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LINDA MARIE PRICE, | CASE NO. 4:17-cv-00409-JED-GBC |
| Plaintiff, | |
| v. | (MAGISTRATE JUDGE COHN) |
| NANCY A. BERRYHILL,[1] Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | |

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Linda Marie Price ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

**I. STANDARD OF REVIEW**

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[1] Ms. Berryhill, Deputy Commissioner for Operations, is leading the Social Security Administration, pending the nomination and confirmation of a Commissioner. Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.     Procedural History**

Plaintiff filed her Supplemental Security Income ("SSI") application on September 17, 2013. (Tr. 23). Plaintiff alleged disability based upon Bipolar I disorder, obsessive compulsive disorder and panic attacks. (Tr. 207). She has a twelfth-grade education. (Tr. 208). An ALJ convened a hearing on June 30, 2015, and Plaintiff did not appear, but her counsel did appear, along with a vocational expert ("VE"), who testified. (Tr. 46-55). The ALJ sent a Request to Show Cause for Failure to Appear on July 1, 2015. (Tr. 161-63). Neither Plaintiff nor counsel responded to the Show Cause letter, and the ALJ issued an Order of Dismissal on July 20, 2015. (Tr. 90). Counsel filed a Request for Review on July 27, 2015, and the Appeals Council issued a Remand on April 6, 2016. (Tr. 91-94).

Upon remand, the ALJ issued an Unfavorable decision on May 16, 2016. (Tr. 20-35). Plaintiff was 54 years old on the date of the ALJ's decision. (Tr. 8-9). Counsel for Plaintiff filed another Request for Review of hearing Decision on June 2, 2016, which was denied May 8, 2017, (Tr. 4-9, 180-182), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. §§ 416.1481; 422.210(a). This action followed.

### III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges three errors: (1) the ALJ erred in fulfilling the Appeals Council's directive regarding Hearings and Appeals Litigation Law Manual ("HALLEX") I-2-4-25D; (2) the ALJ erred at Step Five by finding that based on Plaintiff's mental limitations, she could perform the job duties of document preparer, dietary aide and marking clerk, all of which are too complex for Plaintiff to perform; and (3) the ALJ erred at Step Five in not placing any physical limitations on Plaintiff. (Pl. Br. at 5, Doc. 13).

**A.     Plaintiff's Failure to Appear at the Hearing**

**1.     Constructive Waiver**

Plaintiff states the Appeals Council specified in its order for the ALJ to address whether Plaintiff constructivly waived her right to appear at a hearing, and if not, then grant her another opportunity for a hearing. (Tr. 93). Plaintiff argues the ALJ did not comply with the order. (Pl. Br. at 5). The following exchange occurred at the hearing:

ALJ:     … In attendance is Mr. Gerstner, claimant's representative, however, the claimant is not present. Mr. Gerstner, have you heard from the claimant?

ATTY:     I have not, Your Honor … I have not heard from her and it's been a while since my office has had contact with her, Your Honor.

ALJ:     Okay. We'll go ahead and take testimony. We have a number of exhibits in

4

>
> the file. We have 1-A though 4-A; 1-B through 12-B; 1-E through 22-E; 1-F through 6-F. Any objections or additions?

ATTY:   No, Your Honor.

ALJ:   With that all the exhibits will be admitted.

(Tr. 48). Following the hearing, the ALJ sent a Request to Show Cause for Failure to Appear on July 1, 2015. (Tr. 161-63). Neither Plaintiff nor counsel responded to the Show Cause letter, and the ALJ issued an Order of Dismissal on July 20, 2015. (Tr. 90). Counsel filed a Request for Review on July 27, 2015, and the Appeals Council issued a Remand on April 6, 2016. (Tr. 91-94). The Appeals Council directed the ALJ to:

> determine whether the claimant has constructively waived the right to appear at a hearing (HALLEX I-2-4-25 D.2a.). If the ALJ determines that the claimant has not constructively waived the right to appear at a hearing and finds that the claimant has provided good cause for failure to appear, the ALJ will offer the claimant another opportunity for a hearing (HALLEX I-2-4-25 D.2b.). If the ALJ determines that the claimant has constructively waived the right to appear at a hearing, he or she will proceed with any further action necessary to complete the record and issue a decision.

(T 93). Upon remand, the ALJ noted the directive from the Appeals Council and issued an unfavorable decision:

> In its remand order, the Appeals Council directed the ALJ to determine if the claimant constructively waived the right to appear at a hearing and if so, proceed with any further action necessary to complete the record and issue a decision. The ALJ has complied with each requirement of the Order.

(Tr. 23). Plaintiff argues since the ALJ did not explain the constructive waiver finding, he "erred in fulfilling the Appeals Council's directive" to determine whether Plaintiff constructively waived her right to appear at a hearing. (Pl. Br. 5-6; Tr. 92-93 (citing HALLEX I-2-4-25.D.2, 1993 WL 643012)). While it is true the ALJ did not explicitly state: "I find Plaintiff constructively waived her right to appear at a hearing," (Tr. 23-31), the existence of the decision itself demonstrates the ALJ found Plaintiff had constructively waived her right to a hearing. The Appeals Council's

5

remand order directed that if the ALJ did not find constructive waiver, and found she had good cause for her failure to appear, he should offer her a new hearing. (Tr. 93). Since the ALJ did not offer Plaintiff a new hearing, he followed the course of action the Appeals Council directed in the event he found constructive waiver, namely, he issued a decision. (Tr. 23-31, 93).

Moreover, the record supports this constructive waiver finding. (Tr. 86-90; see also Tr. 23). The agency's HALLEX "conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council staff. HALLEX defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels." HALLEX I-1-0-1. The HALLEX provides that in a case like this one, where the appointed representative appears at the scheduled hearing but the claimant does not, the ALJ may determine the claimant has constructively waived the right to appear if certain criteria are met. Specifically, an ALJ can find constructive waiver of the right to appear at hearing if: (1) the representative is unable to locate the claimant; (2) the notice of hearing was mailed to claimant's last known address; and (3) the contact procedures required by 20 C.F.R. § 416.1438 and HALLEX I-2-3-20 have been followed. HALLEX I-2-4-25.D.2.

Plaintiff only directly challenges the first HALLEX I-2-4-25.D.2 criteria, asserting the ALJ's statement—"[s]he has not stayed in touch with her representative nor the hearing office"—was not supported by a report of contact. (Pl. Br. 5-6) (citing Tr. 29-30). Despite Plaintiff's challenge, the record contains evidence that her representative was unable to locate her. At the June 2015 hearing, the ALJ asked Plaintiff's representative whether he had heard from Plaintiff. (Tr. 48). Her representative stated that he had not heard from her and admitted "it's been a while since my office has had contact with her." (Tr. 48). This evidence is sufficient to support a finding the first HALLEX criteria for constructive waiver was met. Plaintiff does not challenge the second

6

or third criteria. (See Pl. Br at 5-6).[2] Even if the ALJ erred by failing to delineate Plaintiff had constructively waived her right to appear at hearing, remand would not be warranted because Plaintiff has not shown the "likelihood of a different result" in absence of the explicit constructive waiver finding. "But even if the signature did not technically meet HALLEX requirements, this would not necessarily require reversal. Assuming without deciding that we can grant relief for violations of HALLEX procedures, we agree with the Fifth Circuit that only prejudicial violations of HALLEX provisions entitle a claimant to relief." See Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001) (applying prejudice standard for alleged HALLEX violation). Lee v. Colvin, 631 F. App'x 538, 543 (10th Cir. 2015) (unpublished).[3] See Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009)) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

**B.    Residual Functional Capacity ("RFC") and the Hypothetical Question**

   **1.    Performance of Other Work**

Plaintiff contends the ALJ erred at Step Five of the sequential evaluation process by finding based on Plaintiff's mental limitations, she could perform the job duties of document preparer, dietary aide, and marking clerk, all of which are too complex for Plaintiff to perform. (Pl. Br. at

---

[2] As for the second and third criteria of HALLEX regarding notice, at the time of the ALJ's decision, 20 C.F.R. § 416.1438(a) provided the agency "will mail or serve the notice at least 20 days before the date of the hearing." 20 C.F.R. § 416.1438(a). Here, the agency complied with this requirement when it issued the notice of hearing on May 6, 2015—55 days before the scheduled June 30, 2015 hearing. (Tr. 129). This notice contained the information required by 20 C.F.R. § 416.1438(b). (See Tr. 129-34). Finally, the agency complied with 20 C.F.R. § 416.1438(c) when it sent a follow up reminder of Notice of Hearing because neither Plaintiff nor her representative acknowledged receipt of the notice of hearing. (Tr. 155-59). See also HALLEX I-2-3-20 (describing procedures related to acknowledgment of notice of hearing).

[3] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential but may be cited for their persuasive value."

7). In the decision, the ALJ reviewed the record prior to proposing the hypothetical to the VE and formulating the RFC:

> The claimant has the following severe impairments: a bipolar disorder and generalized anxiety disorder.
>
> The claimant has been treated for bipolar disorder and generalized anxiety disorder. Consultative psychological evaluation on December 18, 2013, was consistent with a bipolar disorder and obsessive-compulsive disorder …
>
> In activities of daily living, the claimant has moderate restriction. On December 2, 2013, the claimant stated that she got up and made breakfast for her boyfriend and herself, fed the cats, got back in bed, and slept on and off until 5 or 5:30 p.m. She stated that she had no problems with personal care, prepared complete meals daily, dusted, vacuumed, mopped, cleaned the kitchen, made the bed, cleaned the bathroom, drove a car, went grocery shopping, and could handle her own money. The claimant stated that she watched television, read the news on her phone, petted her cat, and spent very little time with others. She stated that she could follow spoken instructions, got along with authority figures, and did not handle stress well.
>
> In social functioning, the claimant has moderate difficulties. On December 2, 2013, the claimant stated that she spent very little time with others.
>
> With regard to concentration, persistence, or pace, the claimant has moderate difficulties. During [the] consultative psychological evaluation on December 18, 2013, attention and concentration were intact; immediate and delayed recall were intact; and memory was clear and unclouded. The claimant experienced mild lapses in word finding, but performed quite well on mental status tasks related to memory and concentration.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. There is no evidence that the claimant has ever been hospitalized for psychiatric reasons …
>
> Although the claimant alleges disability since May 2010, there is no medical evidence prior to January 2011. The claimant was seen on January 25, 2011, in follow up for bipolar disorder. It was noted that she was stable on Trazadone with no complaints. She was told to continue on Trazadone. Diagnosis was a bipolar disorder and generalized anxiety disorder. The claimant was seen on June 14, 2011, with complaints of mood swings. Her medication was adjusted. On July 20, 2011, the claimant complained of medication side effects. Her medication was changed. She was not seen again until November 18, 2011. The claimant reported that she was only taking Trazadone for sleep and lamictal was added. Her medication was again adjusted on December 16, 2011. On May 1, 2012, the claimant reported that she had stopped taking all of her medication because she ran out. She was restarted

on medication. On June 26, 2012, the claimant stated she was doing fine on Abilify. Mood and sleep were good. The claimant stated that she was happy with her medication and did not want a change. On September 14, 2012, the claimant had pressured speech, was hypomanic, and insight and judgment were poor. Her medication was adjusted. On September 28, 2012, the claimant was doing "a lot" better on Abilify. Mood was stable and sleep was improved. On January 25, 2013, mood and sleep were good, thoughts were logical, and the claimant was calm and not manic. On June 25, 2013, and July 24, 2014, the claimant was calm and thoughts were logical. On September 17, 2013, the claimant reported stress, depression, and panic attacks in dealing with her boyfriend …

The claimant underwent [a] consultative psychological evaluation on December 18, 2013. She reported that she slept 10-14 hours a day, fixed breakfast for her boyfriend, and then went back to bed. The claimant stated that she had bulging discs, thought she had carpal tunnel and diabetes, and had been diagnosed with restless leg syndrome. She also stated that she could not afford to go to the doctor and was not in any mental health treatment. Mental status assessment showed the claimant was oriented to person, place, time, and circumstance. Attention and concentration were intact, immediate and delayed recall were intact, and memory was clear and unclouded. The claimant could follow a four-step command, could read and write levels consistent with her education, and [had] no problems with fine motor or gross motor functions. Affect was blunted, her outlook was negative, eye contact was poor, speech was normal, thought processes were linear and logical, and thought content was relevant. The claimant experienced mild lapses in word finding, but performed quite well on mental status tasks related to memory and concentration. Diagnosis was a bipolar disorder and obsessive-compulsive disorder. Dr. Linde stated that the claimant was able to perform most work-related mental activities including the ability to understand, remember, and sustain concentration. Dr. Linde stated that the claimant's ability to persist when tasks were difficult, socially interact, and meet the demands of a work environment may be compromised.

On October 15, 2013, the claimant complained of poor sleep, racing thoughts, anxiety, panic, and depression. Her medication was changed. On November 15, 2013, the claimant complained of headache. Mental status showed the claimant was calm and thoughts were logical. On March 18, 2014, the claimant complained of stress at home. She was somewhat anxious with psychomotor agitation, but thoughts were logical. Her medication was adjusted again. On April 23, 2014, the claimant stated that "everything is all right" and mood and sleep were good. On August 15, 2014, the claimant complained of anger and was still on medicine. On October 17, 2014, the claimant complained of anxiety, but also stated she had been out of medication for five days. On November 14, 2014, the claimant stated that Geodon made her hungry and admitted to manic episodes. There is no evidence that the claimant was seen for mental health treatment after November 2014.

9

>  20 CFR 416.929 states that the [ALJ] will consider the claimant's work record in assessing whether her allegations are consistent with the evidence. A review of the claimant's earnings record shows very little earnings in her lifetime and no earnings since 2006, seven years before she filed her disability application and four years before she alleges she became disabled. This raises the question as to whether the claimant's continuing unemployment is actually due to medical impairments. The ALJ finds that the claimant's work record does not lend great support to her statements about her inability to work because of subjective complaints.

(Tr. 25-26, 28-29). Thus, the ALJ reviewed the medical evidence and Plaintiff's activities of daily living; social functioning; and concentration, persistence, or pace. From the record, the ALJ found Plaintiff had the RFC to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to simple, repetitive, and routine tasks with only occasional contact with the general public, coworkers, and supervisors; and limited to a code 3 noise environment as set forth in Appendix D of the SCO, which is business office where typewriters are used, department stores, grocery stores, light traffic, and fast food restaurants in off hours.

(Tr. 27). Plaintiff contends the ALJ erred at Step Five of the sequential evaluation process by finding based on Plaintiff's mental limitations, she could perform the job duties of document preparer, dietary aide, and marking clerk, all of which are too complex for Plaintiff to perform. (Pl. Br. at 7). The ALJ formulated the RFC following a review of the record and the findings of the state agency physicians:

>  Based on the foregoing, the [ALJ] finds the claimant has the above RFC assessment, which is supported by the objective medical evidence. The evidence shows that when the claimant is compliant with medication, her symptoms are essentially controlled. There is no evidence that the claimant has sought treatment since November 2014. She has not stayed in touch with representative, nor the hearing office. Thus, given the objective medical evidence in the record, the ALJ finds that the claimant's RFC is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of her symptoms …
>
>  A medical expert with the State Agency determined that the claimant could perform light work activity. A psychological medical expert with the State Agency determined that the claimant could perform simple tasks with routine supervision in a low stress work environment; relate to supervisors and peers on a superficial

>work basis; could not relate to the general public; and could adapt to a low-stress environment. The ALJ has accorded some weight to the opinion of the State Agency psychological medical consultant because he is a deemed expert and highly knowledgeable in the area of disability and because his opinion is well supported by medically acceptable clinical and laboratory techniques and largely consistent with the record as a whole, as set forth above.

(Tr. 29-30). Thus, the ALJ found the objective medical evidence did not support Plaintiff's allegations of disabling limitations. The ALJ questioned the VE as to whether Plaintiff could perform work with the hypothetical RFC, as stated above. (Tr. 50-51). The VE testified Plaintiff could perform alternative jobs as a document preparer, dietary aide, and marking clerk. Id. at 51-52. The ALJ accounted for Plaintiff's mental limitations; as the ALJ limited Plaintiff to simple, repetitive, and routine tasks with only occasional contact with the general public, coworkers, and supervisors. (Tr. 27). See SSR 96-8p, 1996 WL 374184, at *3 ("RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy."). In the RFC finding, the ALJ explained the limitation to simple, repetitive, and routine tasks with only occasional contact with the general public, coworkers, and supervisors accounted for Plaintiff's medically-supportable symptoms and the opinions of record. (Tr. 29-30). See SSR 96-8p, 1996 WL 374184, at *7 (addressing the requirements for articulating RFC finding). The ALJ's decision fulfilled the requirements of the regulations.

### a.     Dietary Aide, Document Preparer, and Marking Clerk

At the hearing, the VE testified an individual with Plaintiff's RFC could perform the jobs of document preparer, dietary aide, and marking clerk. (Tr. 51-52). Plaintiff argues she is unable to perform the document preparer and dietary aide positions because the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") requires a General Educational Development

11

(GED) level 3 reasoning. (Pl. Br. at 8). See Dietary Aide, DOT 319.677-014, 1991 WL 672771; see also Document Preparer, DOT 249.587-018, 1991 WL 672349.

In Hackett, the Tenth Circuit found level 3 reasoning inconsistent with a limitation to "simple and routine work tasks" and remanded the case to the ALJ. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005). However, the Tenth Circuit has observed in dictum a limitation to "simple and routine work tasks" appeared consistent with GED level 2 reasoning. Id. The Marking Clerk position contains a reasoning level of "2," thus complying with Hackett. See Marking Clerk, DOT 319.677-014, 1991 WL 672771.

Plaintiff also contends her limitations warranted a job with one to two-step instructions. (Pl. Br. at 9). However, Plaintiff does not identify a medical opinion providing for a limitation to one to two-step instructions. "Our review of the record indicates that the ALJ's question adequately included the limitations that she found were supported by the medical record. That record, along with the VE's testimony on existing jobs, provided substantial evidence to support the ALJ's step-five determination." Talamantes v. Astrue, 370 F. App'x 955, 959 (10th Cir. 2010).

Thus, any arguable deficiency would be harmless, at most, and would not have changed the outcome. See Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009) (even assuming two of three jobs relied on by the ALJ were erroneous, the court affirmed the ALJ's decision where substantial evidence showed the claimant could do the third job, and the job existed in significant numbers in the national economy). See also Vititoe, 549 F. App'x at 729-30 (citing Sanders, 556 U.S. at 409-10).

//

//

//

## C. Step Five and the RFC

### 1. Plaintiff's Physical Limitations

Plaintiff contends the ALJ erred at Step Five of the sequential evaluation process by not including any physical limitations in the RFC. (Pl. Br. at 9-10). Plaintiff argues Dr. Rahman, Social Security's consultative examiner, noted Plaintiff's fingers were slightly swollen and painful to touch, and that she had a decreased grip strength bilaterally of 3/5. (Pl. Br. at 9) (citing Tr. 429). Also, Dr. Rahman found decreased range of motion in her back, neck, ankles, hips and knees. (Pl. Br. at 9) (citing Tr. 430, 432). Plaintiff states she should have been limited to only sedentary work in light of the ten-pound lifting limit and only occasional handling, fingering and feeling. (Pl. Br. at 9). Plaintiff alleges failing to place any physical limitations on Plaintiff was erroneous, especially in light of her brain surgery to relieve her subdural hygromas, and the discovery of her chronic subdural hematoma. (Pl. Br. at 10) (citing Tr. 295-378). In the decision, the ALJ reviewed the record and medical evidence prior to evaluating Plaintiff's physical limitations within the RFC:

> The claimant was hospitalized on May 17, 2013, and underwent subdural fluid drainage. Diagnosis was subdural hygromas with left partial seventh nerve palsy. The claimant told Dr. Linde that she had carpal tunnel syndrome. She has also alleged right-sided hearing loss. Physical examination on December 16, 2013, revealed decreased grip strength of 3/5 and her fingers appeared swollen and no evidence of hearing loss on either side. These findings could possibl[y] indicate carpal tunnel syndrome. The claimant did not allege disability due to a physical impairment. The claimant has never received treatment for carpal tunnel syndrome. There is no evidence that she ever received treatment for a physical impairment since May 2013. Based on the totality of the evidence, the ALJ finds that the claimant's impairments of status post subdural fluid drainage, alleged hearing loss, and possible carpal tunnel syndrome represent no more than a slight abnormality and would have only a minimal effect on the claimant's ability to perform work-related activities, and thus are nonsevere …
>
> The claimant was seen in the emergency room on May 14, 2013, with complaints of numbness all over for three days. Testing was negative, sensation to touch was intact, grip strength was normal, and strength was 5/5 in all extremities. CT scan of the head showed small subdural hygromas. She was diagnosed with an upper respiratory infection.

> The claimant was hospitalized on May 17, 2013, stating that she was worse and was having trouble talking and swallowing. EMG and nerve conduction studies were normal. MRI and CT scans of the head again showed small subdural hygromas. On May 24, 2013, the claimant underwent subdural fluid drainage. After drainage, most of the claimant's symptoms had resolved and she was discharged with [a] diagnosis of subdural hygromas with left partial seventh nerve palsy …
>
> The physical medical expert with the State Agency is given little weight because the evidence clearly shows that the claimant's physical impairments are nonsevere, as set forth above.

(Tr. 25-26, 28-30). Although consultative examiner Dr. Rahman reported that Plaintiff's fingers were swollen and painful to touch, she described them as functionally intact. (Tr. 429). Dr. Rahman also noted reduced (3/5) grip strength. (Tr. 429). In finding Plaintiff's allegations of hand pain were not a severe impairment, the ALJ explained that Plaintiff never received treatment for carpal tunnel syndrome. (Tr. 25). Moreover, Plaintiff alleged disability due to mental impairments when she filed her application. (Tr. 25, 56, 71). Further, Plaintiff's nerve conduction studies of the right arm and leg on May 17, 2013 were normal (Tr. 343), and examination showed she had full (5/5) strength. (Tr. 353). Later that same month, her coordination efforts for finger-nose-finger were unremarkable. (Tr. 303). Additionally, Plaintiff's inability to copy a complex figure during the December 2013 mental status assessment was due to visual motor deficits and not hand pain. (Tr. 442). Further, Plaintiff reported activities inconsistent with either hand pain or limited range of motion, such as she was able to fix meals daily, dust, vacuum, mop the floor, clean the kitchen, make beds, and clean the bathroom (Tr. 26, 27, 225-26, 441). Plaintiff also reported her attempts to return to work had been unsuccessful due to trouble waking up in the morning or keeping her housekeeping appointments, not because she was physically unable to perform the work. (Tr. 439). Dr. Rahman's one-time findings regarding Plaintiff's fingers and grip strength do not render unreasonable the ALJ's RFC, which was based on the record as a whole.

Plaintiff also argues the decreased range of motion in her back, neck, knees, hips, and ankles warranted physical limitations in the RFC. (Pl. Br. 9-10). Although Dr. Rahman's consultative examination showed less than full range of motion in some joints (Tr. 428), other examinations showed full range of motion and normal gait (Tr. 302) (normal strength and tone), (Tr. 303) (ordinary gait, but a little imbalanced), (Tr. 345) (musculoskeletal examination showed Plaintiff moved all extremities, circulation, motion and sensation intact although she reported weakness in arms and legs), (Tr. 353) (normal examination, full motor strength and normal sensation in all extremities), (Tr. 438) (normal gait). While the state agency physicians included physical limitations in their RFC assessments, the ALJ gave these opinions little weight because their assessed physical limitations were inconsistent with the record as a whole, which showed the physical impairments did not significantly limit Plaintiff's physical abilities. (Tr. 25, 30, 63-64). See 20 C.F.R. § 416.927(c)(4) (when weighing a medical opinion, ALJ considers whether the opinion is consistent with the record); see also 20 C.F.R. § 416.922(a) (nonsevere impairment does not significantly limit a claimant's physical or mental ability to do basic work activities). See 20 C.F.R. § 404.1527(c)(3) (opinions receive weight based on their supportability); see also Branum v. Barnhart, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (ALJ may consider the degree to which the physician's opinion is supported by relevant evidence). Thus, the ALJ reasonably did not include physical limitations in the RFC assessment. Substantial evidence supports the ALJ's RFC finding.

Therefore, the record provided substantial evidence to support the ALJ's decision. It is not the reviewing court's position to reweigh the evidence or substitute judgment. As the Tenth Circuit has explained:

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter,

is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than November 6, 2018.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States,

16

950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on October 23, 2018.

*[signature]*

**Gerald B. Cohn**
**United States Magistrate Judge**